Deveraux
*v.*
Cooper.

---

### JOHN DEVERAUX *v.* AMOS B. COOPER.

#### ( *In Chancery.* )

Courts of chancery adopt the same rules in the construction of writings, where there is no mistake or fraud, as courts of law.

D. sold to H. certain articles of personal property, in consideration that H. *had bound* himself, in a bond, to support D. and his wife, during their natural lives :

*Held*, that this was an executed consideration.

Chancery will not interfere where there is a remedy at law.

THIS was an appeal from a decree of the court of chancery.

It appeared from the bill and answer, that the orator, on the 17th of November, 1835, conveyed his farm to his son, Heman Deveraux, and took back a lease of the same, securing to himself and his wife, the possession and use thereof during their natural lives ; that, in consideration of said conveyance, the said Heman executed a bond without surety, to the orator, conditioned for the support of himself and his wife, during their lives ; and that, thereupon, the orator executed to the said Heman a memorandum as follows :

" Whereas Heman Deveraux has bound himself in a bond
' to support me, John Deveraux, and Mary, my wife, during
' our natural lives, I, on my part, bind myself to the follow-
' ing agreement :—That Heman Deveraux is to have all my
' personal property that I own, and to have thirty-eight dol-
' lars, annually, of my pension money, and to have it semi-
' annually, as I draw ; and that the sole, and only considera-

' tion for said deed of said land, and the above memoran-
' dum, was the said bond of the said Heman."

It was alleged by the orator that, at the time of the conveyance of said personal property to the said Heman, it was agreed between them that the same should remain in the possession of the orator on the said farm, and as appurtenant thereto,—which was denied by the defendant.

It appeared that, soon after the execution of said conveyance, lease and memorandum, the said Heman died, insolvent ; that the defendant was appointed administrator on his estate ; and that, upon a bill in chancery against the defendant, the title of the real estate had been decreed to the orator. It also appeared that, upon his appointment as administrator, the defendant, by order of the probate court, inventoried the personal property embraced in said memorandum, and that, having demanded the same of the orator, and the delivery thereof having been refused, he brought his action of trover for the same against the orator.

The orator prayed that the defendant might be perpetually enjoined from the further prosecution of said suit, &c. The case was tried upon the bill and answer.

Upon the hearing, the chancellor decreed the injunction prayed for.

The defendant appealed.

*Wm. P. Briggs* and *C. D. Kasson*, for defendant.

The case standing upon bill and answer, the latter is to be taken as true in every particular, whether it is responsive or sets up new matter.

1. The answer expressly denies that the conveyance was conditional, or that the personal property was to remain as appurtenant to the farm, but places the construction upon the bill of sale. J. & W., 422; 1 Ves. & B. 524 ; 1 Ch. Eq. Dig. 975–6.

These cases show that chancery adopts the rules of law in the construction of writings ; and that where no fraud or mistake is alleged, the orator is estopped from alleging the agreement to be different from the writing.

2. There can be no doubt the bill of sale vested the property. If it did not vest the property, then the orator could avail himself of it in his defence at law. That being

*Margin note:* CHITTENDEN, *January,* 1843.

Deveraux *v.* Cooper.

the case, this court will not relieve. *Emerson v. Udall*, 13 Vt. R. 477.

3. Will this court, then, under the circumstances, divest the property out of the defendant, and re-invest it in the orator ? *First*, It is denied that, as matter of law, this court has the *power*. *Hunt's adm'r. v. Rousmaniere*, 1 Pet. R. 1 ; 2 Ch. Ca. 93. And, *secondly*, the whole case shows a superior equity in the defendant. 1. The orator has, by his own voluntary act, vested the property in the defendant's intestate, and laid the foundation for the order of the probate court. It is, therefore, fair to presume that, on the credit thus acquired, the debts were contracted, to discharge which the administrator claims the property. The orator's right, if any, is against the *estate*, and he should come in with the *general creditors*. 2. He seeks to claim the *whole estate*; thus giving *him*, a *particular creditor*, preference over the *general creditors*. 3. There is a high equity on the side of the defendant. He is invested, as *administrator*, with the *personal equity* of the deceased—the equity of the *general creditors*,—and has, moreover, that personal equity of his own, arising out of the fact, that by reason of the orator's own act, the property was the *legal estate* of the intestate, who died seized thereof, and which, by an order of the probate court, he was *compelled* to invoice and dispose of : and that, owing to the insolvency of the intestate (over which he had no control) he has expended large sums in settling the estate, and in the prosecution and defence of these suits of the orator, to an extent sufficient to swallow up nearly the whole fund in dispute. And this, without his fault. All has been occasioned by the orator's own act. The case is within the rule of the case of *Hunt v. Rousmaniere*, 1 Pet. R. 1.

4. The equities are, at least, equal ; and, the legal estate being in defendant, he ought to prevail. 2 Ch. Ca. 213. Francis' Maxims, 72.

5. The case between these parties (11 Vt. R.) seemed to proceed upon the ground that the consideration of the deed operated as a trust estate. But we are aware of no case where a secret, undeclared trust has ever resulted out of the sale of personal property, as between vendor and creditors of vendee.

*C. Adams*, for orator.

I. The object was, maintenance of the old people, and compensation to the son for it.

II. The mode attempted for effecting it, was, granting re-versionary interest in land to the son, and agreeing to transfer the personal property.

III. *Construction.*—*All* the papers are parts of one trans-action. Deed and lease vested a life estate in the father, and remainder in the son. The agreement is *executory*, and therefore, the same thing is effected as to the personal pro-perty. If the old man's agreement transfers the legal inter-est in the personal property to the son, the son's agreement, in like manner, revests the same property in the father, during his life.

Performance by the son is a condition precedent; and before he could claim any interest in the personal property, he must have performed the whole condition of the bond.

IV. No consideration was paid by the son, and, therefore, a resulting trust was raised, that he should hold the property for the use of his father and mother, during their lives.

Bond not to be regarded, in equity, as a payment for the property, but as evidence of the trust, and limiting the extent of the son's liability.

Equity will consider that as done, which the parties have agreed to do; and, as the son agreed to provide lodging, clothing &c., for his parents, the court will hold the property as re-delivered to the old people, in fulfilment of his bond.

The property being conveyed to the son, upon a personal confidence, and the death and insolvency of the son render-ing performance impossible, the court will decree a return of the property, unless the administrator will guarantee a performance of the son's undertaking.

Defendant can have no lien for expenses. He cannot claim as creditor; nor as purchaser, and, as representative, he can hold no greater right, nor interest, than the son could.

The opinion of the court was delivered by

HEBARD J.—This case was set down for trial upon bill and answer.

The bill alleges, and the answer admits, that the orator conveyed his real estate to his son, Heman, taking back a

life lease to himself and his wife,—and that his son, Heman, obligated and bound himself to support the orator and his wife during their natural lives; and that the orator, in consideration that the said Heman had thus bound and obligated himself, made with the said Heman, the following agreement:—"That the said Heman is to have all my personal property that I own, and to have thirty eight dollars annually of my pension money, and to have it semi-annually as I draw: and that the sole and only consideration of said deed of said land, and the above memorandum, was the said bond of the said Heman."

The principal question in the case arises upon the construction of said memorandum or agreement. And in relation to that, there can be very little doubt. The sale of this property was upon an executed consideration. The property was not sold and delivered to said Heman, to be his, upon condition that he *should support* the said John and his wife, during their lives, but the sale was perfected; and the consideration of the sale was, that the said Heman *had bound* himself in a bond to support the said John and his wife during their natural lives. It cannot, therefore, be said that the consideration has failed, for it was as much performed as it would have been if it had been a promise for the payment of money, and that promise evidenced by the execution and delivery of a note of hand. By adopting this view and construction of the writing, there is nothing for chancery to do. While the law will relieve against the faults and frauds of others, it leaves every man to bear his own misfortunes; and considering the legal effect of this contract as vesting the title of this property in the said Heman, we have no power to reinvest the title in the orator. Nor would it be equitable to do so, if we had the power, under the circumstances of this case. The administrator, in the settling of the estate of the said Heman, has taken upon himself liabilities, and incurred expenses, for the liquidating of which, he relies upon this property; and the administrator should be protected while acting in the honest and legal discharge of his duty. But if, as is contended by the orator, the title to the property was not vested in the said Heman, a resort to the court of chancery was un-

necessary, as the orator's rights could be sufficiently protect- <span style="float:right">CHITTENDEN,<br>January,<br>1843.</span>
ed at law.

The decree of the chancellor is reversed, and the bill is <span style="float:right">Pierson<br>v.<br>Clayes et al.</span>
dismissed.